**Oscar Marion and Sophie Marion, Claimants-Appellants, v. In the Matter of the Estate of Stanley Wegrzyn, Respondent-Appellee.**

**Gen. No. 52,331.**

First District, Fourth Division.

March 20, 1968.

Irving Block, of Chicago, for appellants.

Maurice H. and Fred S. Ruttenberg, of Chicago, for appellees Lorraine Jarzynski and Stanley Ciesla.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Claimants appeal from an order refusing to strike defendant's answers to the bills of particulars and from a dismissal of their claims.

On June 2, 1966, claimants filed claims alleging performance of services for decedent in his tavern from April 1944 to August 1954. Oscar Marion claimed $13,000 and Sophie Marion $13,180. On August 26, 1966, defendant moved for a bill of particulars requesting that claimants set out whether the contract for services was oral or written, the nature of the work performed and whether any money or consideration was paid to claimants during decedent's lifetime. Claimants filed their particulars stating that they had been employed by Mary Wegrzyn, deceased wife of decedent, on or about June 1944; that their services were terminated on September 21, 1956; that decedent was fully aware of these employments. They then described their work and alleged that Oscar was due $49,303.50 at the prevailing rate of $1.50 per hour and that Sophie was due $26,551.20 at $1.25 per hour. Amended claims were filed and answers thereto de-

manded strict proof, denied the services and asserted a bar of the Statute of Limitations. On motion of defendant amended claims were stricken on the ground that they were barred by the five-year limitation of the Statute of Limitations [1] and second amended claims were filed on January 4, 1967. These alleged that personal services were rendered to decedent from June 1944 to September 1956 and that on numerous occasions within the last five years decedent acknowledged that he was indebted to and owed claimants money for services performed by them. Defendant's answers to the amended claims were ordered to stand as answers to the second amended claims. On March 21, 1967, defendant asked leave of court to answer the bills of particulars and filed answers neither admitting nor denying the allegations inasmuch as the coexecutors had insufficient knowledge.

On April 19 the claimants moved to strike the answers as not in compliance with section 37(3) of chapter 110, Illinois Revised Statutes (1965). This section provides:

> If a bill of particulars, in an action based on a contract, contains the statement of items of indebtedness and is verified by oath, the items thereof are admitted except in so far as the opposite party files an affidavit specifically denying them, and as to each item denied states the facts upon which the denial is based, unless the affidavit is excused by the court.

Claimants urge error in the court's refusal to strike defendant's answers to the bills of particulars. These sworn answers stated that the coexecutors had insufficient knowledge to form a belief as to the truth and veracity of the claims and asked for strict proof. Plaintiffs contend that defendant's failure to specifically an-

_____
[1] Ill Rev Stats (1965) c 83, § 16.

swer each item constituted an admission under section 37(3). The Historical and Practice Notes to that section state that section 37(3) "should be read with Section 40(2)" which states:

> Every allegation, except allegations of damages, not explicitly denied is admitted, unless the party states in his pleading that he has no knowledge thereof sufficient to form a belief, and attaches an affidavit of the truth of the statement of want of knowledge, or unless the party has had no opportunity to deny.

We find no logic in an interpretation under which a defendant who has sworn he has no knowledge of the facts and is seeking specific information is deemed to have admitted those very facts because he has not denied them. The court did not err in refusing to strike the answers to the bills of particulars.

██ We would also point out that the bills of particulars related to the original claims. A bill of particulars is deemed to be part of the complaint which it particularizes (Louis v. Barenfanger, 81 Ill App2d 104, 226 NE2d 85). Therefore, when the original claims were superseded by the second amended claims, the bills of particulars no longer applied. See Cantow v. Foute, 335 Ill App 574, 82 NE2d 696 (abst.).

Furthermore, when the court refused to strike the answers to the bill of particulars, this action could be construed as an exercise by the court of its statutory discretion to excuse an affidavit of denial. Ill Rev Stats, c 110, § 37(3), quoted above.

There was no evidence introduced at the trial as to the nature and extent of the claimed services. It was stipulated that two witnesses would testify to certain wage scales for general work in a tavern and for a bartender.

Other evidence was submitted by claimants consisting of the depositions of six persons to show that decedent had acknowledged that he was indebted to and owed money to claimants for services rendered to him. Three of the witnesses testified to the same conversation of April 1965. One stated that decedent had said to the claimants:

> You have done so much for me during the time you have worked for me. I will repay you this gratefully.

Another,

> Zos, I owe you a lot. You did a lot for me.

And third,

> I will never forget you as far as reimbursing you financially for what you did for me.

Mr. and Mrs. Korsak testified to a conversation with claimants in July 1965 in which decedent said:

> Oscar is a good man. He helped me. In my will I will take care of him "financially."

Mrs. Korsak also stated:

> We did discuss the Marions and he told us how they took care of his business while he was away; how they took care of him when he was sick, how they kept the business and cleaned the halls and that he would take care of them in his will.[2]

Marion Marion, a sister of Oscar Marion, testified that decedent told her in 1964 that:

> . . . he liked my brother and that he was going to take care of him financially, that he owes him a lot of favors, when he takes his vacation my brother

and his wife take care of the tavern and are responsible for weddings there and he never paid him.[2]

In Keener v. Crull, 19 Ill 189, the court in its opinion first stated the background, at page 190:

The case shows that the wife, while sole and of full age, remained with her father, and worked in the family from 1833 to 1838; that, in 1850, the father, who is the defendant's testator, in a conversation with one Longwith, said "that he had agreed to give his daughter, (the now feme covert plaintiff with her husband), two hundred dollars per year for her work, and he had not paid her yet, and she had gone to Ohio." The debt, if one existed, was barred by the statute, and the question is, whether, by reason of the admissions of her father in 1850, the plaintiffs are entitled to recover against his executor?

The court held that plaintiffs could not recover, stating at page 191:

The language of the defendant's testator was used to a stranger having no concern in the matter, or right to act for the party in interest, *the amount of the debt was not named or in any manner indicated, nor was there any language unequivocally importing a present intention or undertaking to pay.* (Emphasis supplied.)

 Claimants did not prove by a preponderance of the evidence that there was a new promise within five

---

[2] This contradicts claimants' bill of particulars that they worked continuously for twelve years, Oscar fifty-three hours a week when decedent was in town and sixty-three hours when out of town, for a total of $49,303.50. Sophie claimed thirty-six hours a week and later [sic] forty-six hours per week for a total of $26,551.20.

years which would remove the bar of the Statute of Limitations and in fact produced no evidence to support their claims.

The judgment of the Circuit Court dismissing the claims is affirmed.

Affirmed.

McCORMICK, P. J. and ENGLISH, J., concur.