THE VILLAGE OF OAK PARK, Plaintiff-Appellee, *v.* JOHN FLANAGAN, Defendant-Appellant.—THE VILLAGE OF OAK PARK, Plaintiff-Appellee, *v.* JAY LANE, Defendant-Appellant.

First District (4th Division) Nos. 59720-21 cons.

Opinion filed December 10, 1975.

Thomas R. O'Bryan, of Oak Park, for appellants.

Richard A. Martens, of Oak Park, for appellee.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

The defendants, John Flanagan and Jay Lane, appeal from judgments of the Circuit Court of Cook County, Fourth Municipal District, finding them guilty of violating section 30.6(1) of the Code of the Village of Oak Park, pertaining to parking.

The issues presented for review are whether the Village's complaints were legally sufficient and whether section 30.6(1) of the Code of the Village of Oak Park, which prohibits parking on any Oak Park street between 2:30 a.m. and 6 a.m., except for emergency vehicles, is a reasonable exercise of the power conferred by the legislature on local authorities.

On October 5, 1971, the Village commenced an action against Jay Lane alleging he had violated the ordinance in question at a particular time and place and alleged he had a total of 14 unpaid parking summonses in the amount of $57.

On October 8, 1971, the Village commenced a similar action against John Flanagan, charging him with violating the ordinance at a particular time and place and charging him with having a total of 87 unpaid parking summonses in the amount of $408.

The violations all accrued prior to the effective date of the home rule provisions of the Constitution of 1970 of the State of Illinois.

John Flanagan moved to strike the allegation of the complaint which

referred to the total number of violations as being surplusage and to dismiss the cause. The motion was denied by the court.

At trial on July 31, 1973, in the case of John Flanagan, the court allowed the Village to file a computer print-out designating the ticket number, date of violation, license number, violation location, and amount of fine of each of the 87 unpaid summonses as a bill of particulars. Flanagan renewed his motion to strike the allegation of the additional unpaid parking summonses and the motion was denied. The defendant therein stipulated that the violations occurred on the dates and at the locations indicated on the print-out sheet.

On July 31, 1973, the court found both defendants guilty of violating the ordinance. Jay Lane was fined a total of $70 plus $5 costs, and John Flanagan was fined a total of $435 plus costs of $5.

The defendants first contend the court erred in denying the motion to strike the portion of the complaint alleging a total number of unpaid parking summonses. They contend there was a joinder of separate claims or causes of action upon which separate recoveries might be had contrary to section 33(2) of the Civil Practice Act. (Ill. Rev. Stat. 1971, ch. 110, § 33(2).) At trial counsel for the defendant stated that 87 separate offenses required a separate charge for each.

■■ In Illinois a municipality's authority to collect fines for ordinance violations has been traditionally characterized as quasi-criminal, and the Civil Practice Act applies. (*City of Danville v. Hartshorn* (1973), 53 Ill.2d 399; *Village of Midlothian v. Walling* (1969), 118 Ill.App.2d 358.) It is well established that a quasi-criminal complaint need not be drawn with the precision of an indictment or information, and it is adequate if it informs the defendant sufficiently to enable him to prepare his defense. If circumstances are such as to make a more detailed statement necessary, a motion of that nature can be made. (*Village of Park Forest v. Nicklas* (1968), 103 Ill.App.2d 99; *City of Chicago v. Dowdell* (1970), 126 Ill.App.2d 58.) Section 33(3) of the Civil Practice Act requires that the pleadings be liberally construed with a view to doing substantial justice between the parties.

In essence, the Village's complaint, together with the computer print-out as the bill of particulars, is one complaint with 87 separate counts. It was adequate to inform the defendant as to the nature of the offense and he was fully able to contest the facts of each violation had he chosen to do so. Flanagan, however, neither answered the complaint nor denied guilt, but stipulated to the facts.

Under these circumstances, there was no prejudice to the defendant, and the complaint was sufficient.

The defendants next contend section 30.6(1) of the Code of the Village of Oak Park prohibiting parking between the hours of 2:30 a.m. and 6 a.m. is not a reasonable exercise of the power conferred by the legislature on local authorities.

■■ The Illinois Legislature has expressly conferred upon local authorities the power to regulate the parking of vehicles in section 11—80—2 of the Illinois Municipal Code (Ill. Rev. Stat. 1971, ch. 24, par. 11—80—2):

> "The corporate authorities of each municipality may regulate the use of the streets and other municipal property."

In *City of Bloomington v. Wirrick* (1942), 381 Ill. 347, 359, the court upheld a similar grant of authority under the previous statute (Ill. Rev. Stat. 1941, ch. 24, par. 23—10), stating:

> "The right to park in the street is a right already vested in the public, subject to reasonable regulation as to time and place. But this is not an absolute right. * * * Municipalities have the right to regulate parking in the public streets."

Also see *City of Chicago v. McKinley* (1931), 344 Ill. 297.

A municipality may also regulate parking on the street as an exercise of its police powers. Section 11—208 of the Illinois Vehicle Code (Ill. Rev. Stat. 1971, ch. 95½, par. 11—208) provides in part:

> "(a) The provisions of this Chapter shall not be deemed to prevent local authorities with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power from:
>
> 1. Regulating the standing or parking of vehicles."

In *People v. Linde* (1930), 341 Ill. 269, the court upheld a State law limiting the gross weight of vehicles upon the State highway. The court stated the right to use the public streets "may be limited and controlled by the State in the exercise of the police power wherever necessary to provide for and promote the safety, peace, health, morals and general welfare of the people * * *." 341 Ill. 269, 275.

■■ Thus, it is clear that a municipality has the authority to regulate parking, and the only remaining question is whether the exercise of that authority is reasonable. In *Haggenjos v. City of Chicago* (1929), 336 Ill. 573, the court upheld the right of a municipality to regulate parking, but struck down an ordinance which prohibited parking in the loop area of the City of Chicago between the hours of 7 a.m. and 6:30 p.m. except on Sundays, certain holidays, and on Saturdays after 3 p.m. The court held that it was not a reasonable exercise of the power to prohibit the standing of any vehicle on the streets for any purpose or for any time,

10

so as to prohibit throughout all the business hours of every business day the free use of the streets in a reasonable way.

In the case of *City of Chicago v. McKinley* (1931), 344 Ill. 297, 304, the court stated:

> "We held in the *Haggenjos* case that the city had the power to regulate the use of the streets and the traffic upon them  *  *  *; that it was clear that some regulation of the standing of vehicles on the street was necessary for the safety, welfare and convenience of the public, and that it was the duty of the city council to determine what regulation was required for the public welfare, the only limitation upon the exercise of this power being that it should be reasonable."

In this case there was testimony from Wilbur Reichert, the Chief of Police of the Village of Oak Park, that the ordinance minimizes auto thefts and facilitates the discovery of stolen automobiles. He also stated it eliminates the getaway car used by burglars and armed robbers, and tends to eliminate hiding places for other criminals.

Glen R. Sunde, the Director of Public Works for the Village of Oak Park, testified that the ordinance is of tremendous value to the residents of Oak Park in terms of snow and leaf removal and street sweeping.

We believe the Village of Oak Park established the reasonableness of the ordinance, and we hold that the ordinance is a proper exercise of powers granted by the Illinois Legislature.

For these reasons, the judgments of the Circuit Court of Cook County are affirmed.

BURMAN and JOHNSON, JJ., concur.