THE CITY OF CHICAGO, Plaintiff-Appellant, *v.* HERTZ COMMERCIAL LEASING CORPORATION *et al.*, Defendants-Appellees.

First District (1st Division)   No. 57891

Opinion filed April 26, 1976.—Rehearing denied June 23, 1976.

SIMON, J., specially concurring in part and dissenting in part.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Richard F. Friedman, Assistant Corporation Counsel, of counsel), for appellant.

Leo J. Spivack, of Chicago, for appellee Hertz Commercial Leasing Corporation.

Allan N. Lasky, of Chicago, for appellees Avis Rent-A-Car Systems, Inc., and Chrysler Leasing Corporation.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

This appeal by the City of Chicago brings before us three suits, consolidated in the trial court, against Hertz Commercial Leasing Corporation, Avis Rent-A-Car Systems, Inc., and Chrysler Leasing Corporation (defendants). The City sought to recover payment of fines for alleged parking ordinance violations by cars owned by defendants. Defendants Hertz and Avis are in the business of renting motor vehicles to the general public. Defendant Chrysler owns vehicles which were leased to defendant Avis and used by Avis as part of its rental fleet. The order appealed from, entered without hearing evidence, dismissed Count I of the City's amended complaint and entered declaratory judgment on Count II that defendants were not responsible for parking violations by vehicles registered in their names but in possession of their lessees. A summary of the trial record is essential.

In August 1967, complaints were filed by the City of Chicago in the

traffic division of the circuit court against all three defendants, alleging that cars registered in their names had been parked in violation of City ordinances during 1966. The City prayed judgment for fines of $88,185 against Hertz, alleging 5879 violations; $73,425 against Avis, alleging 4895 violations; and $37,395 against Chrysler, alleging 2493 violations.

In March of 1968, each defendant filed a demand for a bill of particulars, asking that it be provided with the exact time and location of each alleged parking violation. The demand also requested information regarding the date of follow-up notices allegedly sent by the clerk of the circuit court; the name and address of each person to whom the notices were sent; and also the court date, courtroom specified and the contents of each of said notices. Each defendant also filed a motion for a change of venue from the traffic division to the municipal division of the circuit court.

In March 1969, plaintiff filed a motion in response to defendants' demands for bills of particulars. This motion offered to provide defendants with the original hang-on tickets, so that they could ascertain when and where each violation occurred, but stated that plaintiff had no knowledge regarding the follow-up notices which were prepared and mailed by the clerk of the circuit court.

The motions for change of venue were granted and all three cases were transferred to the municipal division of the circuit court. The three actions were consolidated and an amended complaint was filed on November 15, 1971. The first count of the complaint contained the same allegations and prayer for relief as the original complaints. A computer print-out was attached to and incorporated into the amended complaint, listing the license number and City of Chicago sticker number of each car involved, the ordinance allegedly violated and the alleged date of each violation. The second count of the amended complaint sought a declaratory judgment regarding interpretation of the City ordinance as did the original complaint.

Defendants moved to dismiss Count I of the amended complaint on the ground that it did not sufficiently inform them of the specific charges so that they could prepare a defense, since it failed to allege the time of each parking violation. Defendants alleged that no response or objection had been made to their demand for a bill of particulars. Rather, they alleged, the City took the position that there was no need to reply to the demand because the complaint had established defendants' absolute liability. Finally, defendants alleged that the delay by the City in providing them with the necessary information had so prejudiced them, that such information, if currently available, would no longer enable them to prepare their defense.

Defendants answered Count II of the amended complaint. As will

hereinafter be completely stated, defendants urged that the court construe the pertinent ordinance in a manner different from that set forth by the City.

The City also filed an "opposition" to defendants' motion to dismiss. This pleading alleged that the computer print-out incorporated into Count I of the amended complaint sufficiently apprised defendants of the offenses charged so that they might prepare a defense; and also that no reply was required to the demand for a bill of particulars because the complaint adequately alleged a prima facie case against defendants, so defendants had the burden of going forward and showing why they should not be held liable. Finally, the motion alleged that the City's delay did not prejudice the defendants in any manner.

On April 4, 1972, the trial court entered a draft order striking Count I of the amended complaint because it failed to state the time and location of the offenses so as to enable defendants to prepare a defense. Because plaintiff adhered to the position that a prima facie case was established by the pleadings, Count I was dismissed.

The court also entered a declaratory judgment on Count II construing the pertinent ordinance in accordance with the theory advanced by defendants. The issues raised by the two counts of the amended complaint will next be considered in order.

The plaintiff first contends that the trial court improperly dismissed Count I of the amended complaint for failure to provide defendants with a bill of particulars, because the information supplied to defendants was sufficient to enable them to prepare a defense. In response, defendants cite section 37(2) of the Civil Practice Act which provides that a court has discretion to strike the pleading if a party "unreasonably neglects to furnish a bill of particulars, or if the bill of particulars delivered is insufficient * * *." (Ill. Rev. Stat. 1975, ch. 110, par. 37(2).) The opposite party is entitled to a bill of particulars where allegations of a pleading are deficient in details. *Hemingway v. Skinner Engineering Co.* (1969), 117 Ill. App. 2d 452, 458, 254 N.E.2d 133.

In March 1968, each defendant filed a demand for a bill of particulars, asking the time and location of each alleged violation, as well as information regarding follow-up notices allegedly sent by the clerk of the circuit court. Plaintiff responded to the demand, stating that it had no knowledge regarding the follow-up notices. Plaintiff also offered to provide defendants with each of the original hang-on tickets so that defendants could determine exactly when and where each violation occurred. The record does not reveal any response to this offer by defendants.

On November 15, 1971, an amended complaint was filed for the three consolidated cases. Defendants did not renew their demand for a bill of

particulars, but moved to dismiss Count I of the amended complaint because it failed to allege the time of each parking violation. The motion also alleged that plaintiff had never provided defendants with the requested bill of particulars. In dismissing Count I of the amended complaint, the trial court noted that defendants' requests for information regarding the time and location of each violation were proper, but that the City maintained that the computer print-outs alone provided adequate information to establish a prima facie case.

The trial court neglected to note that the defendants failed to renew their demands for a bill of particulars in response to the amended complaint. It is established law that, "Where an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn." (*Bowman v. County of Lake* (1963), 29 Ill. 2d 268, 272, 193 N.E.2d 833. See also *Yarc v. American Hospital Supply Corp.* (1974), 17 Ill. App. 3d 667, 670, 307 N.E.2d 749, and cases cited therein.) A bill of particulars is deemed to be a part of the complaint which it particularizes. (*Marion v. In re Estate of Wegrzyn* (1968), 93 Ill. App. 2d 205, 208, 236 N.E.2d 328.) Therefore the responses to defendants' original demand for bills of particulars, whereby the City tendered all of the original tickets for inspection, would be deemed a part of plaintiff's original complaints. The filing of the amended complaint by the City necessitated a new demand for a bill of particulars. Failure of defendants so to do constituted a waiver of their previous demand for particulars.

The computer print-outs appended as exhibits to the amended complaint became an integral part thereof for all purposes. (*Sharkey v. Snow* (1973), 13 Ill. App. 3d 448, 451, 300 N.E.2d 279.) As shown, these documents set out the Illinois license number and Chicago vehicle sticker number of each car involved as well as the ordinance allegedly violated and the date of each alleged violation. This should have been sufficient for defendants to present their defense concerning imposition of vicarious liability as their records would presumably indicate whether or not the particular automobile was in possession of a renter on the date in question. The only information lacking would be the place of each violation. If this additional information should become necessary, defendants could readily obtain it by examination of the original hang-on tickets. The burden should not rest entirely upon the City of laboriously, and with great expense, supplying all of the information as to the place of each alleged violation when a large part of this material might well be unnecessary. As stated in defendants' brief, much of this information goes to the factual issue as to whether a violation actually occurred.

Thus, if defendants availed themselves of access to the original tickets as tendered by the City, they would have all of the essential information.

In *Village of Oak Park v. Flanagan*, 35 Ill. App. 3d 6, 341 N.E.2d 16, this court held a complaint for 87 separate traffic violations with computer print-outs appended as exhibits which gave date of violation, city and State license numbers and location of violation was sufficient. In the case before us, an additional bill of particulars was not required to supplement the computer print-outs and the right to production and inspection of all the original tickets. The City was, in our opinion, not required to furnish defendants with copies of the notices of violation sent to defendants. These notices could at best have been only a duplication of the information contained upon the tickets themselves. These notices were sent out by the clerk of the circuit court. There is no showing that the City had possession of copies of this information, which, if essential, should be produced by the usual legal process.

■■ The order dismissing Count I of the amended complaint is therefore reversed and Count I remanded for additional proceedings not inconsistent with this opinion.

It remains to consider the contentions of the parties arising from the second count of the amended complaint which prayed a declaratory judgment. This court alleged that defendants were all licensed corporations in Illinois doing business in the city. The complaint then set forth chapter 27, section 364 of the Municipal Code of Chicago:

> "Presumptions: Whenever any vehicle shall have been parked in violation of any of the provisions of any ordinance prohibiting or restricting parking, the person in whose name such vehicle is registered shall be prima facie responsible for such violation."

The City alleged that there were approximately 11,000 parking tickets outstanding concerning automobiles owned by defendants and that it was probable that many, if not all, of these automobiles were in the possession of lessees of the defendants when the various violations occurred. The City alleged that the above portion of the Municipal Code imposed liability for parking violations on the registered owners and that proof of lack of control of the automobiles by defendants by virtue of leasing agreements could not be asserted and was not competent evidence as a defense. This second count of the amended complaint prayed declaratory relief (Ill. Rev. Stat. 1969, ch. 110, par. 57.1) establishing that under the Municipal Code of the City, the registered owner of a vehicle parked in violation of the ordinance was responsible for such violation and that under this ordinance it would not be a defense that said owner was not in possession of the vehicle at the time of violation.

Defendants filed a joint answer to the second count of the amended complaint. They admitted that they were the registered owners of all of the vehicles involved but averred that they were engaged in the business of renting and leasing automobiles to various customers pursuant to

bailment contracts and that during the term of these agreements each motor vehicle was in exclusive possession and control of their customer-lessee. Defendants further averred that the ordinance quoted by the City creates a presumption of liability upon registered owners of vehicles for violation of parking ordinances which may be rebutted by proof that on the date and at the time of violation the vehicle was not in the control of defendants but was in the exclusive possession and control of their customer-lessee or bailee. The answer alleged that proof that a vehicle was thus under lease at the time of the alleged violation was a complete defense on behalf of the registered owner. Defendants prayed that the court deny the City's interpretation of the ordinance and that the court declare that the presumption thereby created could be rebutted by a proper showing that, at the pertinent time, the vehicle was not in possession of the registered owner.

The trial court was provided with memoranda of law by both sides and heard argument of counsel. The court found that the second count of the amended complaint was properly brought for declaratory judgment. The court declared, as requested by defendants, that the quoted section 364 of the Municipal Code creates a presumption that the registered owner was in possession of the vehicle on the date and at the time of the violation; this presumption may be rebutted by a showing that at the time and date of the violation the vehicle was not in possession or under control of the owner; and that defendants are not responsible for parking violations involving vehicles registered in their names which such vehicles were in the possession of their customers-lessees.

We are in accord with the decision of the learned trial judge concerning his conclusion that the action for declaratory judgment was properly brought. Although the details and provisions of rental agreements or leases are not before us, the admissions in the pleadings provide sufficient basis for a declaration of the rights of the parties under the pertinent ordinance. In this opinion we assume that defendants were the registered owners of all of the vehicles involved in all of the alleged violations and, as averred in the answer of defendants, we assume that certain of these vehicles were, at the time of the alleged violation, in the possession and under the control of rental customers. The issue here is liability of the registered owner of a motor vehicle for a parking violation of a City ordinance when possession and control of the automobile has been surrendered by the owner to a third party under a mutually permissive arrangement such as the type of bailment generally referred to as a rental or lease agreement.

This court has previously held that proof of ownership or control by the defendants is essential to the imposition of a fine for a parking violation. (*City of Chicago v. Myers* (1968), 95 Ill. App. 2d 443, 237 N.E.2d 866.) In

the case before us, in view of the admission by defendants' motion to dismiss the first count of the amended complaint, we will proceed on the assumption that the violations all existed as set forth in the computer print-outs appended to the amended complaint and also that defendants were the registered owners of the vehicles with license numbers as set forth in these print-outs. This assumption will not preclude full opportunity to defendants, if they so desire, after they have answered the first count, to raise pertinent factual issues regarding the existence of an ordinance violation in each instance.

The ordinance provides that the registered owner "shall be prima facie responsible for such violation." The meaning of the phrase "prima facie" and its application in the law of motor vehicles is well illustrated by the Supreme Court of Illinois in *McElroy v. Force* (1967), 38 Ill. 2d 528, 232 N.E.2d 708. The Court there discussed an instruction which told the jury that if they found that a certain person was the owner of one of the automobiles, it was to be presumed that he was operating the same at the time of the collision. The court pointed out that a presumption may be defined as an inference to be drawn by common sense from a known course of events which usually leads to the existence of a related fact. (38 Ill. 2d 528, 531.) The court also pointed out that a presumption does not operate to shift the burden of proof but only to shift to the party against whom it operates the burden of going forward and introducing evidence with which to overcome the presumption. In the absence of such countervailing evidence, the presumption is sufficient to support a finding. 38 Ill. 2d 528, 532, 533.

Application of the principles thus expounded in *McElroy* lead to the conclusion that this ordinance is intended to have a presumptive effect. This conclusion is supported by a number of cases. In *City of Chicago v. Crane* (1943), 319 Ill. App. 623, 49 N.E.2d 802, the parties stipulated that defendant was the registered owner of a vehicle which had been unlawfully parked. Defendant put in no evidence and the court held that the presumption of liability should be applied. The court expressly pointed out (319 Ill. App. 623, 631):

> "It is common knowledge that many thousands of automobiles are parked in the streets at all times and it would be inconvenient and impossible for a municipality such as Chicago to keep watch over parked vehicles to ascertain who in fact operated or parked them."

The presumptive ordinance is thus a necessary aid to municipalities in enforcement of parking restrictions. In addition to *Crane*, the following authorities arrive at the same result regarding presumptive operation of this type of traffic ordinance: *Commonwealth v. Ober* (1934), 286 Mass. 25, 189 N.E. 601; *People v. Kayne* (1938), 286 Mich. 571, 282 N.W. 248, and *People v. Bigman* (1940), 38 Cal. App. 2d 773, 100 P. 2d 370.

The conclusion reached in all of these cases and supported by the language of the ordinance before us does not necessarily solve the problem presented by this record. The nub of the issue before us is whether the existence of a bailment or rental agreement is sufficient to permit the imposition of a vicarious liability upon the leasing company or whether the City should be required to attempt enforcement of its ordinance against the lessee-bailee who was in possession and operation of one of defendants' automobiles at the time of the violation.

The ordinance above quoted is section 364 of chapter 27 of the Chicago Municipal Code. Chapter 27 contains general regulations pertaining to traffic. The problem of parking is considered in sections 27—305 to 27—332 inclusive. These sections contain numerous regulations regarding parking. Section 364 of chapter 27 as above quoted is a general section which applies to all of the remaining provisions pertaining to parking. The major problem here is not precisely a construction of section 364. As above shown, the words "prima facie" have a definite and well-recognized legal meaning. It is apparent that the ordinance definition in this regard is not intended to operate in a conclusive manner or to foreclose any and all defenses by the owner of a vehicle. Within the recognized definition of "prima facie" the ordinance operates only to shift the burden of producing evidence from the City to the defendant. The real problem before us then is best described as a matter of substantive law in determining whether the fact that the owner of an illegally parked vehicle has rented it to a third person for hire is competent evidence as a defense against the imposition of vicarious liability upon the owner. Stated otherwise, the issue here is whether proof of a permissive bailment or rental agreement is legally sufficient to overcome the presumptive liability imposed upon the vehicle owner by the ordinance.

We find a division of authority in answering this question. In *Red Top Driv-Ur-Self v. Potts* (1957), 227 Ark. 627, 300 S.W.2d 261, the municipality took the position that the lessor of the automobile was conclusively liable for payment of the fine. The Supreme Court of Arkansas held that such an interpretation of the ordinance would make it unconstitutional and that the offer by the rental company to furnish the municipality with the name and address of all persons who had rented their automobiles at the time of each violation was sufficient to absolve the owner-lessor of the vehicle from liability for the traffic violation. The court listed a number of pertinent authorities bearing upon this issue. (See 227 Ark. 627, 628, 629.) We find the Arkansas case cited and followed in *People v. Avis Rent-A-Car Division* (1960), 206 N.Y.S. 2d 400, 24 Misc. 2d 1056, decided by the County Court of Westchester County. The court there held that a conclusive presumption would infringe upon constitutional rights and the ordinance should be construed in a

constitutional manner by relieving the owner of responsibility when he has produced evidence to show that since he was bailor he had no control over commission of the traffic violation by the bailee.

In *Commonwealth v. Minicost Car Rental, Inc.* (1968), 354 Mass. 746, 242 N.E.2d 411, an automobile was given a parking ticket. It had been rented out for hire by the defendant. The parties agreed that there had been a violation of the ordinance which provided that the registered owner shall not, "allow, permit or suffer * * *" the vehicle to violate parking regulations. The Supreme Court of Massachusetts held that it is permissible for a legislative body to impose vicarious liability for an act where the penalty is "relatively small, and conviction does no grave damage to an offender's reputation." (354 Mass. 746, 749, citing from *Morissette v. United States* (1952), 342 U.S. 246, 96 L. Ed. 2d 288, 72 S. Ct. 240.) The Massachusetts Supreme Court also pointed out that this decision would not amount to a deprivation of property without due process of law and also, "Far from being a denial of the equal protection of the laws, a decision for the defendant would more likely create one." 354 Mass. 746, 749.

We are in accord with the result reached and with the reasons expounded by the Supreme Court of Massachusetts. We would not characterize this result as based upon a so-called conclusive presumption in interpretation of the ordinance before us. In this regard we need not consider the result reached by the Arkansas and New York cases above cited which deal with the legal results of conclusive presumption. It would not seem proper or fair to impose vicarious liability upon an owner where possession of the vehicle had been taken from him without his knowledge and against his will, as in the case of theft. However, where the registered owner of a motor vehicle voluntarily transfers possession thereof for hire, we have no hesitation in imposing a vicarious liability for traffic violations by the actual driver. It is far easier for the rental company to protect itself against the driver of the car who actually violated the ordinance than it would be for the City to try to pursue such violators. See 354 Mass. 746, 749, where the court noted the existence of such a protective provision in the rental agreement.

Also, it is common knowledge that the renting of automobiles is a lucrative business which should not be permitted to use its own operation as a shelter for those who violate legitimate and salutary City ordinances. It is grossly unfair that residents of a large metropolitan area who are responsible and amenable to the City for parking violations should be required to obey these ordinances, which are of crucial importance for reasons of safety and for expediting the flow of traffic, while rental companies can obtain full benefit of the City's traffic facilities for their

own profit and at the same time use their business effectively to prevent uniform and fair enforcement of traffic regulations.

■■ The result reached by the trial court as regards the second count of the amended complaint is reversed and the cause remanded for further proceedings predicated upon the legal theory that the ordinance here in question *is* presumptive *in its* operation but that *rental agreements or bailments* to third parties entered into by defendants in the usual course of their business do not constitute a defense to the claim of the City against the defendants themselves as registered owners for traffic violations committed by operators of the rented vehicles.

Accordingly, the order appealed from is reversed and the cause remanded with directions regarding trial of Count I and disposition of Count II as above set forth.

Reversed and remanded with directions.

BURKE, J., concurs.

Mr. JUSTICE SIMON, specially concurring in part and dissenting in part:

I disagree with the conclusion that the defendants waived their demand for a bill of particulars by failing to renew it after the amended complaint was filed. Since Count I of the amended complaint was identical with the original complaint, filing a new demand for a bill of particulars would have been only a needless duplication. In *Marion v. In re Estate of Wegrzyn* (1968), 93 Ill. App. 2d 205, 236 N.E.2d 328, the only case cited by the majority which deals with a bill of particulars in instances where an amended complaint had been filed, the amendment differed substantially from the original complaint. In the interest of simplifying litigation and reducing the volume of court records and paper work the judicial process requires, the demand for a bill of particulars directed to the original complaint should in this case be applicable to the amended complaint even though the demand was not formally repeated by an additional document.

I concur with the majority that the city responded sufficiently to the demand for the bill of particulars by advising the defendants that the original hang-on tickets would be made available for their inspection. This procedure, similar to the one provided for producing documents containing information sought by interrogatories (Supreme Court Rule 213(d)), is more expedient than burdening the court records with written responses setting forth the particulars of the time and location of each of more than 11,000 parking violations. Based on the assumption that the city will make the hang-on tickets available for inspection in a form legible

enough so that the defendants can compile from them the information with respect to each violation sought by the request for the bill of particulars, I agree that reversal of the dismissal order as to Count I is appropriate.

So far as Count II of the complaint is concerned, I would affirm the circuit court. I see no constitutional defects in the ordinance as interpreted by the city. I simply do not agree that section 364 of the Chicago Traffic Regulations or the numerous ordinances regarding parking found in chapter 27 of the Chicago Municipal Code are fairly susceptible to the interpretation given it by the city and ratified by the majority opinion.

As the majority points out, section 364 applies to other sections of the Chicago Municipal Code which relate to parking. Section 364 makes the owner presumptively liable for a parking violation in some instances even where the other sections as worded do not. Three examples taken from chapter 27 illustrate this point. Section 308(a) provides:

"When signs have been erected upon any street indicating that * * * parking is prohibited during designated hours * * * no person shall park any vehicle on said street in violation of any such signs."

That ordinance applies to a person who parks a vehicle, not to the owner unless the owner is such a person. Section 311(a)(13) provides:

"It shall be unlawful for the operator of any vehicle to' * * * park such vehicle in * * * the following places * * *: At any place where official traffic signs have been erected prohibiting * * * parking."

This ordinance on its face is a prohibition directed to the operator rather than the owner unless the owner is also operating the vehicle. Similarly, section 329 applies to the owner only if he is the operator. It provides:

"It shall be unlawful for the operator of any motor vehicle * * * to park such vehicle in such parking meter zone for a period of time longer than is designated on the meter for the value of the coin * * *deposited in such meter."

For a person who may not fit the description of the offender as set forth in these three ordinances to be made presumptively liable by section 364, and then precluded from rebutting the presumption because the person who actually parked or operated the vehicle was his lessee or his bailee is neither logical nor reasonable. This is particularly true where the only basis for reaching this result is a rule labeled by the majority as one of substantive law, but gleaned by the majority from the application of traffic regulations of the city of Boston which contained no provision making the owner only "prima facie responsible" and in many respects

differed from the Chicago ordinances.[1] A rule of substantive law is suspect if its effect is to transform a presumption which the ordinance in question clearly provides is rebuttable into an irrebuttable one in situations where the owner's bailee or lessee rather than the owner was the offender. If the city of Chicago intends to preclude the owner from rebutting the presumption raised by its ordinance by showing the owner's lessee or bailee was responsible for the illegal parking, the ordinance should be amended to state that. Instead, the majority has masked its distortion of the ordinance by using the label of "a matter of substantive law" to rewrite the traffic ordinances set forth above, and others as well, by concluding that the owner has no defense and is guilty where his lessee or bailee is the person who operates the vehicle or parks it.

I agree that (i) illegal parking of cars on city streets is a public mischief; (ii) as a matter of public policy and traffic administration the city authorities should not be required to keep watch over parked vehicles to find out who parked them; (iii) the car rental companies can protect themselves against illegal parking of their cars by their customers, and they should not be permitted to escape responsibility for their cars illegally parked on city streets and at the city airport. I applaud the result the majority strives to reach, but it should be accomplished by an amendment of the ordinance instead of by an interpretation carving an irrebuttable presumption under some circumstances out of an ordinance which on its face provides only for "prima facie responsibility" in all circumstances. I would, therefore, affirm the circuit court's construction of the ordinance in response to Count II of the complaint. In the interest of freeing the streets of illegally-parked cars owned by the defendants, I would urge the City Council of Chicago to amend the city traffic regulations so that they provide the owner is responsible for illegal parking of a vehicle which is in the possession of his bailees, lessees or customers.

---

[1] *Commonwealth v. Minicost Car Rental, Inc.* (1968), 354 Mass. 746, 242 N.E.2d 411, and *Commonwealth v. Ober* (1934), 286 Mass. 25, 189 N.E. 601, on which the majority relies, dealt with rules and regulations of the Boston Traffic Commission.