(No. 48699.—

THE CITY OF CHICAGO, Appellee, v. HERTZ COM—
MERCIAL LEASING CORP. et al., Appellants.

*Opinion filed April 3, 1978.—Rehearing denied May 26, 1978.*

336

Kirkland & Ellis, of Chicago (Don H. Reuben, Lawrence Gunnels, Leo K. Wykell, and Shane H. Anderson, of counsel), for appellant Hertz Commercial Leasing Corporation.

Friedman & Koven, of Chicago (Howard R. Koven, Phil C. Neal, Martin M. Ruken, and Lawrence M. Templer, of counsel), for appellants Avis Rent A Car System, Inc., and Chrysler Leasing Corporation.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Richard F. Friedman, Assistant Corporation Counsel, of counsel), for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

This case involves the interpretation of a parking ordinance of the city of Chicago (City) with respect to an owner's responsibility for vehicles illegally parked by a person other than the owner. In August of 1967, the City brought three actions, consolidated in the trial court, against Hertz Commercial Leasing Corporation, Avis Rent-A-Car System, Inc., and Chrysler Leasing Corporation (defendants). In count I of its amended complaint, the

City sought to recover payment of fines from the defendants as the registered owners of vehicles allegedly parked in violation of municipal ordinances during 1966. The City prayed for judgments of $88,185 against Hertz, charging 5,879 violations; $73,425 against Avis, charging 4,895 violations; and $37,395 against Chrysler, charging 2,493 violations. Count II requested a declaratory judgment, conceding that the violating vehicles were probably in the possession of lessees of the defendants at the time of the violations. The City, nevertheless, sought to have the applicable parking ordinance interpreted to preclude the defendants from raising the defense that the owner was not in possession of the vehicle at the time of the violation.

The trial court dismissed count I, finding that it did not sufficiently inform the defendants of the details of the alleged violations. The appellate court reversed and remanded count I for trial. (38 Ill. App. 3d 835.) This aspect of the decision is not before us.

On count II, the trial court entered a declaratory judgment finding that the applicable parking ordinance creates a presumption that the registered owner was in possession of the vehicle at the time of the parking violation, that the presumption may be rebutted by a showing that the vehicle was not in fact in the possession of the registered owner, and, ultimately, that the defendants were not responsible for violations while the vehicles were in the possession of their lessees. A majority decision of the appellate court reversed, holding that the parking ordinance imposes vicarious liability on the registered owner and that an owner is not absolved of responsibility if, at the time of the parking violation, he had "voluntarily transfer[red] possession [of the vehicle] for hire." (38 Ill. App. 3d 835, 844.) We granted the defendants' petition for leave to appeal.

The adopted municipal ordinance in question provides:

"Whenever any vehicle shall have been parked in violation of any of the provisions of any ordinance prohibiting or restricting parking, the person in whose name such vehicle is registered shall be *prima facie responsible* for such violation and subject to the penalty therefor." (Emphasis added.) Chicago Municipal Code, ch. 27, sec. 364(a).

We emphasize at the outset that the ordinance cannot be read to treat owners who lease vehicles for hire any differently from owners who gratuitously lend their vehicles to friends or family members. The issue, though framed differently by the parties in response to the appellate court's opinion, is whether the ordinance purports to impose liability on the owner as the presumptive driver of the vehicle at the time of the parking violation, or whether it purports to impose vicarious liability on the owner, regardless of who actually parked the vehicle. If the former, then an owner—any owner, not merely an owner who leases vehicles for hire—may absolve himself of liability by showing that he was not the person who parked the vehicle alleged to have been in violation of a parking ordinance.

Parking ordinances similar to, and almost identical to, the above cited ordinance have been examined by courts throughout the country over the past 50 years. The controversy almost invariably emerges as a concerted attempt by the courts to discern the intention of the local authority in regulating parking. Some local authorities seek to impose liability ultimately on the driver and do so by summoning the registered owner to court, at which time the owner is presumed to have parked the vehicle. The owner may successfully rebut this presumption, in which case the local authorities are thrust into the dilemma of either securing personal jurisdiction over the driver, or

dismissing the case.[1] Other local authorities seek to impose liability directly on the registered owner, in which case the owner is held vicariously responsible for the violation. In either case, the person subject to the penalty is strictly liable, in the legal sense that the owner or driver need not have intended to commit the offense to be responsible for the violation.

The defendants vigorously argue that the plain meaning of the words *"prima facie* responsible" in the Chicago ordinance indicates that it was the municipality's clear intention to allow the registered owner to rebut the presumption that the vehicle was parked by the owner. The issue cannot be so facilely resolved. The words *"prima facie"* mean nothing more than "at first sight" or "so far as can be judged from the first disclosure" or "presumably" or "without more." (Black's Law Dictionary 1353 (4th ed. 1957); *Iowa City v. Nolan* (Iowa 1976), 239 N.W.2d 102, 105.) In its statutory context, the words *"prima facie"* mean that the City has established its case against the registered owner by proving (1) the existence

---

[1]In 1968, the city of New York passed an ordinance which provided that an owner who rents or leases vehicles shall be jointly and severally liable with the customer or lessee for parking violations. A report which accompanied the ordinance stated: "This proposed local law, as amended, would make auto lessors jointly and severally liable with the lessees of the vehicle for violation abuses whereby scofflaws may avoid the payment of traffic fines. At present, New York City is losing millions of dollars annually in unpaid parking tickets issued against rented vehicles. Invariably, auto lessors plead in Traffic Court that the customer and not the auto rental firm, is responsible for the traffic tickets. The court traditionally will either lay over such cases, adding to the ever-increasing backlog, or else drop the matter as a general practice due to the difficulties in securing personal jurisdiction over the actual violator." *Kinney Car Corp. v. City of New York* (1968), 58 Misc. 2d 365, 295 N.Y.S.2d 288, 290, *aff'd* (1971), 28 N.Y.2d 741, 321 N.Y.S.2d 121, 269 N.E.2d 829.

of an illegally parked vehicle, and (2) registration of that vehicle in the name of the defendant. Such proof constitutes a *prima facie* case against the defendant owner. There is no indication in the ordinance that the owner, to be presumed responsible for the violation, must be presumed to have been the person who parked the vehicle. In practice, the defendant, to absolve himself of responsibility, may show that the vehicle was not parked illegally or that he was not the registered owner of the vehicle at the time of the alleged violation. The defenses are limited, but the plain meaning of the ordinance admits of no more.

A predecessor of the ordinance in question provided:

"Whenever any vehicle shall have been parked in violation of any of the provisions of this chapter prohibiting or restricting parking, the person in whose name such vehicle is registered shall be subject to the penalty for such violation." (Chicago Municipal Code, ch. 27, sec. 34.1.)

This unambiguous language imposes both strict and vicarious liability on the owner whenever his vehicle is illegally parked, irrespective of whether the owner was the person who parked the vehicle.

The defendants assert that, because the present ordinance added the words *"prima facie* responsible for such violation," the City deliberately chose to incorporate into the ordinance the presumption that proof of ownership is *prima facie* evidence that the vehicle was parked by the owner. We interpret the development of the ordinance differently.

In *City of Chicago v. Crane* (1943), 319 Ill. App. 623, the appellate court was called upon to construe the predecessor ordinance to determine whether an owner could be subject to the penalty for a parking violation which he did not commit or authorize. The trial court had found that an ordinance which "purports to make the owner of a car liable whenever the car is illegally parked *** is completely without basis in law." (319 Ill. App.

623, 627.) The appellate court reversed, holding that the City established a *prima facie* case against the owner by proving that the defendant owned the car that was parked within 15 feet of a fire hydrant. The defendant had offered no evidence to rebut the *prima facie* case. In its opinion, the court cited cases from other jurisdictions which involved ordinances, all of which attached liability to the owner, but which differed in that they found the owner either liable as the owner or as the presumptive driver at the time of the violation. Because, in *Crane,* the owner did not introduce any evidence to rebut the *prima facie* case, the court was not called upon to determine if that Chicago ordinance imposed liability on the owner as owner or as the presumptive driver. It did, however, emphasize that the City had "made out a *prima facie* case." (*City of Chicago v. Crane* (1943), 319 Ill. App. 623, 631.) We can assume only that the City amended its ordinance to indicate, as intimated in the *Crane* decision, that proof of a violation and of registered ownership establishes the City's *prima facie* case against a defendant and that the defendant may rebut either element of the *prima facie* case. See K. Levin, *Ownership as Evidence of Responsibility for Parking Violation,* 41 J. Crim. L. & Criminology 61, 62 (1950).

Our own research reveals four cases from other jurisdictions which interpret the words *"prima facie* responsible" in precisely the context presented in this case. In *City of Columbus v. Webster* (1960), 170 Ohio St. 327, 328, 164 N.E.2d 734, 735, the applicable ordinance read, in pertinent part:

" 'If any vehicle is found *** in violation of any *** ordinance of this city, regulating the stopping or standing or parking of vehicles, and the identity of the driver cannot be determined, the owner, or person in whose name such vehicle is registered shall be held *prima facie responsible for such violation.*' " (Emphasis added.)

Ohio's supreme court, in holding the owner vicariously liable for the parking violation, expressly rejected the interpretation that the ordinance made "proof of illegal parking and registered ownership *prima facie* evidence that the vehicle was parked by the owner." It stated that the ordinance "merely places *prima facie* responsibility for the illegal parking of a motor vehicle on the public streets upon the owner of such vehicle. It thus places the responsibility upon the person who is in the best position to know the identity of the operator." *City of Columbus v. Webster* (1960), 170 Ohio St. 327, 331, 164 N.E.2d 734, 737.

The Supreme Court of Missouri reached the same conclusion in interpreting a Kansas City ordinance which provided that "the owner or person in whose name such vehicle is registered in the records of any city, county or state shall be held *prima facie responsible for such violation,* if the driver thereof is not present." (Emphasis added.) (499 S.W.2d 449, 451.) The court concluded that "[t]he words *'prima facie'*, as used in this ordinance, do not mean that the owner is presumed to be the driver," and held that the ordinance "places responsibility upon the *owner* without any requirement that he be found to have been the *driver,* whether that finding is premised on a presumption or direct evidence." (Emphasis in original.) (499 S.W.2d 449, 452.) The court further noted that an ordinance "imposing liability for the parking violation fine on the owner as well as the driver may well result in fewer violations and thereby assist in the reduction of traffic problems." (*City of Kansas City v. Hertz Corp.* (Mo. 1973), 499 S.W.2d 449, 452-53.) We note that the case provided an identical factual context to this case, in that a rental company had leased its car to a person whose identity was known by the court and who assumedly committed the violation.

In *Iowa City v. Nolan* (Iowa 1976), 239 N.W.2d 102, 103, the applicable ordinance provided similarly:

"If any vehicle is found stopped, standing or parking in any manner violative of the provisions of [applicable ordinances] and the identity of the operator cannot be determined, the owner or person or corporation in whose name said vehicle is registered shall be held *prima facie responsible for said violation.*" (Emphasis in original.)

Iowa's supreme court, citing the *Kansas City* case, held that, under the ordinance, a registered owner may be held vicariously liable for his illegally parked vehicle.

In a distinguishable case, an intermediate appellate court did reach a different conclusion. In *City of Portland v. Kirk* (1974), 16 Ore. App. 329, 331 n.1, 518 P.2d 665, 666 n.1, the ordinance provided that "[t]he registered owner of the vehicle is *prima facie responsible for the violation* charged by the parking citation." (Emphasis added.) The court concluded that the ordinance established a permissive inference that the owner of the vehicle was the party who parked the vehicle. We note, however, that the Portland ordinance permitted imprisonment for up to six months for parking offenses. Although the court did not imply that it reached its conclusion in light of the possibility that an owner could be subject not only to fine but to imprisonment, it is recognized that vicarious liability should not be extended as readily to crimes which may subject a defendant to imprisonment. W. LaFave & A. Scott, Criminal Law sec. 32, at 223 (1972); F. Sayre, *Criminal Responsibility for the Acts of Another,* 43 Harv. L. Rev. 689, 723 (1930).

We are in accord with the results reached by the supreme courts of Ohio, Missouri and Iowa. We believe that the City intended, under both the previous and the present ordinances, to subject the owner of an illegally parked vehicle to the penalty for such parking violation. The incorporation of the words *"prima facie* responsible" merely clarified that the defendant is not conclusively subject to penalty once the City establishes its *prima facie* case of a violation and ownership, but that he can come

forward with evidence contraverting either element of the case against him. Accordingly, we hold that the Chicago parking ordinance imposes vicarious liability on the registered owner and that proof that the vehicle was in the possession of another at the time of the violation is irrelevant to the substantive offense.

A question then arises as to whether the imposition of vicarious liability on an owner who rents a vehicle for hire, thereby voluntarily relinquishing the possession and control of the vehicle for the term of the lease agreement, is a constitutional denial of due process. The United States Supreme Court had occasion to consider the extent to which liability could be imposed on a vicarious party without depriving the party of its constitutional right to due process in *Van Oster v. Kansas* (1926), 272 U.S. 465, 71 L. Ed. 354, 47 S. Ct. 133. There a Kansas statute declared that a vehicle used in the illegal transportation of liquor was a common nuisance and subject to forfeiture. An owner voluntarily entrusted his vehicle to another who unlawfully used the vehicle without the owner's knowledge. In affirming the constitutionality of the statutory forfeiture procedure, the court stated:

> "It is not unknown or indeed uncommon for the law to visit upon the owner of property the unpleasant consequences of the unauthorized action of one to whom he has entrusted it. \*\*\* So here the legislature, to effect a purpose clearly within its power, has adopted a device consonant with recognized principles and therefore within the limits of due process." (*Van Oster v. Kansas* (1926), 272 U.S. 465, 467-68, 71 L. Ed. 354, 358, 47 S. Ct. 133, 134.)

Since that time, the United States Supreme Court has approved vicarious liability for violations which subject the vicarious party to criminal as well as civil liability. (*United States v. Dotterweich* (1943), 320 U.S. 277, 88 L. Ed. 48,

64 S. Ct. 134; *United States v. Park* (1975), 421 U.S. 658, 44 L. Ed. 2d 489, 95 S. Ct. 1903.) Vicarious criminal liability has been found within the limits of due process to the extent that the person who is unaware of the wrongdoing stands "in responsible relation to a public danger." (*United States v. Dotterweich* (1943), 320 U.S. 277, 281, 88 L. Ed. 48, 51, 64 S. Ct. 134, 136.) The responsible relation of an owner of a vehicle to its operation and use is a natural one. The public has a right to expect that a vehicle owner who voluntarily surrenders control of his vehicle to another is in the best position both to know the identity and competence of the person to whom he entrusts the vehicle and to deter the commission of parking violations. As one court has stated, "The knowledge of the ordinary user of another's car that the owner who permitted its use would have to respond to a summons and submit to a trial \*\*\* would in all likelihood be a strong deterrent \*\*\*." *Kinney Car Corp. v. City of New York* (1968), 58 Misc. 2d 365, 295 N.Y.S.2d 288, 292, *aff'd* (1971), 28 N.Y.2d 741, 269 N.E.2d 829, 321 N.Y.S.2d 121.

As to owners who rent vehicles for hire, contractual provisions—such as an express acknowledgment of personal liability to pay the lessor on demand for all parking fines and court costs or the requirement of security deposits—would also serve to deter the irresponsible commission of parking violations. Therefore, the imposition of vicarious liability on an owner who voluntarily relinquishes control of his vehicle to another is constitutionally permissible. Accord, *Commonwealth v. Minicost Car Rental, Inc.* (1968), 354 Mass. 746, 242 N.E.2d 411.

We do not have occasion, under the facts of the instant case, to decide whether a vehicle owner can be held vicariously liable for a violation committed by a person, such as a thief, to whom the owner may have no "responsible relation" and no means of deterring such

violation.

In an attempt to respond to the appellate court's opinion, the defendants rely on three distinct constitutional arguments based. upon (1) the creation of an irrebuttable presumption, (2) the denial of equal protection, and (3) the retroactive creation of a penal offense.

An irrebuttable presumption may be a constitutional denial of due process if it deprives a party of the opportunity to prove the nonexistence of an essential element of the substantive offense. The defendants' position assumes that an essential element of the ordinance is the presumption that the owner was the person who parked the vehicle. As we have previously stated, the ordinance does not purport to incorporate that presumption into the substantive offense. The two elements of the substantive offense are rebuttable by a showing that a violation was not committed or that the defendant was not the owner at the time of the violation. The constitutional requirement of procedural due process is satisfied because the defendant is not precluded from rebutting either element of the substantive offense.

The defendants' contention that the ordinance denies them equal protection under the law must also fall. As we emphasized at the outset, we do not interpret the ordinance to impose vicarious liability only upon owners who rent their vehicles for hire. Because the ordinance does not create a classification which distinguishes rental owners from ordinary vehicle owners, no equal protection issue is involved.

Similarly, we find no merit to the defendants' argument that by construing the ordinance to impose vicarious liability on vehicle owners we have retroactively created an offense which could not have been reasonably ascertained from a reading of the ordinance. The fundamental principle is that a criminal law must not be given retroactive effect if judicial construction of the law is

" 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.' " (*Bouie v. Columbia* (1964), 378 U.S. 347, 354, 12 L. Ed. 2d 894, 900, 84 S. Ct. 1697, 1703.) On its face, the ordinance imposes liability on an owner whenever his vehicle is illegally parked. Our construction of the ordinance is entirely consistent with the result reached in *City of Chicago v. Crane* (1943), 319 Ill. App. 623, as well as with recognized principles of vicarious liability for parking offenses in many other jurisdictions. Supreme courts in three neighboring jurisdictions have specifically interpreted the words *"prima facie* responsible" to have the meaning which we ascribe to them. Moreover, one of the defendants here was the party held vicariously liable in one case interpreting an ordinance which involved similar language. (*City of Kansas City v. Hertz Corp.* (Mo. 1973), 499 S.W.2d 449.) We, therefore, conclude that the defendants could have reasonably anticipated a construction of the ordinance which imposes vicarious liability on the owner of an illegally parked vehicle irrespective of whether the owner actually parked the vehicle.

The defendants also contend that construing the ordinance to impose vicarious liability on the owner places it in direct conflict with sections 11–1305(a), 16–201, and 16–202 of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, pars. 11–1305(a), 16–201, 16–202), which, in 1966, were part of the Uniform Act Regulating Traffic on Highways (Ill. Rev. Stat. 1965, ch. 95½, pars. 188a, 236, 237). Section 11–1305(a) applies specifically to vehicle owners who lease their vehicles to others, and declares that such owners, "after receiving written notice of a violation of this Article or a parking regulation of a local authority involving such vehicle, shall upon request provide such police officers as have authority of the offense, and the court having jurisdiction thereof, with a written statement of the name and address of the lessee at

the time of such offense and the identifying number upon the registration plates of such vehicle." (Ill. Rev. Stat. 1975, ch. 95½, par. 11—1305(a).) Sections 16—201 and 16—202 state, in essence, that a person who commits a violation of the Code or an owner or other person who directs or knowingly permits a vehicle to be operated on a highway in a manner contrary to law is guilty of an offense under the Code. (Ill. Rev. Stat. 1975, ch. 95½, pars. 16—201, 16—202.) The defendants argue that the ordinance is inconsistent with section 11—1305(a) in that the statutory provision contemplates that lessor-owners be absolved of liability for parking violations by providing the names and addresses of the lessees who possessed the vehicles at the time of the offenses. They argue that the ordinance is also inconsistent with sections 16—201 and 16—202, in that those statutory provisions, by exclusion, contemplate that vehicle owners cannot be found guilty of vehicle-related offenses merely because they own the vehicle at the time of an offense.

Section 11—1305(a) is wholly consistent with a municipal ordinance which imposes vicarious liability on any owner of a vehicle. The section is absolutely silent regarding allocation of liability. It dictates only that, *upon request,* a vehicle lessor shall provide the name and address of the lessee. We find no basis for defendants' assertion that the section contemplates that lessor-owners be absolved of liability for traffic violations by providing the name and address of the lessee who possessed the vehicle at the time of the offense. On the contrary, the section does not purport to limit liability to the lessee, but, rather, to facilitate the imposition of liability on either the lessor or the lessee. A municipality which permits liability to be imposed only upon the person who parked the vehicle might request the information in an effort to pursue the lessee. Another municipality, which provides for the imposition of liability directly on the owner as well as on

the person who parked the vehicle, might invoke this section in an effort to attach liability on either the lessor or the lessee. The intention of section 11—1305(a) is to leave the decision of the allocation of liability to those law-enforcement officials who have authority over the prosecution of the specific offenses. The section is not in conflict with the ordinance in question and certainly does not repeal it by implication.

Sections 16—201 and 16—202 define those persons who might be criminally liable for offenses committed under the Illinois Vehicle Code. The sections do not expressly exclude vicarious liability as a basis for holding a person responsible for vehicle-related offenses. The defendants contend, however, that the sections clearly evince a legislative policy which precludes the imposition of vicarious penal liability. Assuming *arguendo* that such a legislative policy exists, we must still confront the narrower question of whether the imposition of vicarious liability for municipal parking violations is inconsistent with a legislative policy which pertains to penal offenses. To answer that, we must examine the statutory scheme embraced by the Illinois Vehicle Code.

Section 11—207 of the Code (Ill. Rev. Stat. 1975, ch. 95½, par. 11—207), like its predecessor (Ill. Rev. Stat. 1965, ch. 95½, par. 122), provides for the uniform enforcement of traffic laws throughout the State and in all municipalities therein. It also provides that no local authority shall enact or enforce any ordinance in conflict with the provisions of the Code unless expressly authorized in the Code, but that local authorities may adopt additional traffic regulations which are not in conflict with the Code. (Ill. Rev. Stat. 1975, ch. 95½, par. 11—207.) Section 11—208 of the Code (formerly section 26 of the Uniform Act Regulating Traffic on Highways (Ill. Rev. Stat. 1965, ch. 95½, par. 123)) authorizes local authorities to enact and enforce ordinances regulating, among other

things, the parking of vehicles. It reads, in pertinent part:

> "(a) The provisions of this Chapter shall not be deemed to prevent local authorities with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power from:
>   (1) Regulating the standing or parking of vehicles ***." Ill. Rev. Stat. 1975, ch. 95½, par. 11—208(a).

Section 11—207 and its predecessor have been interpreted on numerous occasions by this court and by the appellate courts. The section has been consistently construed to allow local authorities to adopt traffic ordinances to the extent that they are not inconsistent with State law. The section does not attempt to preempt the field to the exclusion of local authorities. (*Ayres v. City of Chicago* (1909), 239 Ill. 237; *City of Rockford v. Floyd* (1968), 104 Ill. App. 2d 161, 169-70.) Section 11—208 underscores the State's policy of allowing local authorities to adopt traffic ordinances by specifying areas in which local autonomy will be preserved. It is no coincidence that the Illinois Vehicle Code does not purport to extensively regulate parking. The purpose of this statutory scheme is apparent. Although the Code expresses the general preference for uniform traffic regulations throughout the State, it also contemplates limited areas, such as the regulation of parking, for which statewide uniformity is wisely sacrificed in deference to the problems endemic to the individual municipalities.

This statutory scheme of separating municipal traffic violations from statutory traffic violations is reinforced by statutes indicating that the punishment of municipal traffic offenders is limited to fines (Ill. Rev. Stat. 1975, ch. 24, pars. 1—2—1, 1—2—1.1) and by regarding such violations as "quasi-criminal," endowed with many of the aspects of noncriminal cases, *e.g.,* proof by a preponderance of evidence rather than proof beyond a reasonable

doubt. (*City of Chicago v. Joyce* (1967), 38 Ill. 2d 368, 372-73; *Village of Maywood v. Houston* (1956), 10 Ill. 2d 117, 119.) In this regard, we have held that, in the absence of clear statutory language expressing an intention that State laws subsume those areas of local regulation, we will not construe local ordinances to be in conflict with State law. (*City of Chicago v. Joyce* (1967), 38 Ill. 2d 368, 373.) Moreover, recognized rules of statutory construction presume the harmonious operation and effect of two laws, so that specific ordinances are presumed to be consistent with and independent of general State laws. (1A Sutherland, Statutes and Statutory Construction secs. 23.10, 23.18, 30.05 (4th ed. 1972).) We do not read sections 16–201 and 16–202 to impliedly establish a policy that an owner cannot be vicariously liable for municipal parking violations. The sections apply only to criminal violations of the Illinois Vehicle Code. As we noted earlier, it is understandable that a legislative policy would preclude the imposition of vicarious penal liability under the Vehicle Code because statutory traffic violations, unlike municipal traffic violations, are criminal in nature and may subject a defendant to severe punishment, including imprisonment. In light of this bifurcated statutory scheme, we feel that it would be improper to apply a legislative policy against vicarious penal liability to the municipal regulation of parking, a province for which the Vehicle Code contemplates local autonomy. Accord, *Kinney Car Corp. v. City of New York* (1968), 58 Misc. 2d 365, 295 N.Y.S.2d 288, 292-93, *aff'd* (1971), 28 N.Y.2d 741, 321 N.Y.S.2d 121, 269 N.E.2d 829.

We agree with the results reached by the appellate court, but do so for the reasons stated above. We, therefore, affirm the judgment of the appellate court and remand to the trial court for proceedings consistent with this opinion.

*Affirmed and remanded.*